IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 21, 2014 at Knoxville

**ABRAHAM MITCHELL v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 12-05815     Chris Craft, Judge**

_____

**No. W2014-00047-CCA-R3-PC  - Filed January 12, 2015**

_____

Abraham Mitchell ("the Petitioner") pleaded guilty to one count of vandalism over $10,000 and one count of attempted theft of property valued over $1,000 and was sentenced to four years as a Range I offender.  In this appeal from the denial of post-conviction relief, the Petitioner argues that his plea was not entered voluntarily, knowingly, and intelligently; that he was denied effective assistance of counsel; and that he was denied due process of law.  After a thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY. JR., J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Terrell L. Tooten, Memphis, Tennessee, for the appellant, Abraham Mitchell.

Robert E. Cooper, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Amy P. Weirich, District Attorney General; and Lora Fowler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual and Procedural Background**

The Petitioner was originally charged with vandalism over $10,000, attempted theft of property valued over $1,000, resisting official detention, and evading arrest in connection

with the vandalism of several roof-top air conditioning units. When the Petitioner was arrested, he was standing about 20 feet from a ladder leading up to the roof, and he told the officers he was the "look-out man."

The Petitioner was offered several plea agreements in this case. In general sessions court, the State offered to have the Petitioner plead guilty in exchange for a two-year sentence to serve. The Petitioner refused the offer and had a preliminary hearing. Once the case was in criminal court, the State offered to let the Petitioner plead guilty on the vandalism over $10,000 and attempted theft charges in exchange for an effective ten-year sentence as a Range II offender. Trial counsel was able to negotiate the plea offer down to six years as a Range II offender and subsequently down to a "today only" offer of four years as a Range II offender. That offer was later amended to four years as a Range I offender to fit within the sentencing guidelines. The Petitioner ultimately accepted this offer and was sentenced to an effective term of four years as a Range I offender for the vandalism and attempted theft charges, and a nolle prosequi was entered on the remaining charges.

After his plea, the Petitioner filed a pro se petition for post-conviction relief. New counsel was appointed, and an amended petition was filed. In his petition for post-conviction relief, the Petitioner argued that he was confused during the plea colloquy, and therefore his plea was involuntary and unknowing. He further argued that his trial counsel coerced him into pleading guilty and that trial counsel was ineffective. Additionally, the Petitioner argued that he was denied due process because the court should have taken extra care to ensure that the Petitioner understood the plea agreement once the Petitioner informed the court that he could not read. After a hearing, the post-conviction court denied post-conviction relief. This timely appeal followed.

*Guilty Plea Submission Hearing*

On the morning of the plea proceedings, trial counsel conducted a voir dire examination with the Petitioner.[1] During the examination, the Petitioner stated that he wished to ask the court a few questions. He said that he did not understand why he should plead guilty when the arresting officer testified at the preliminary hearing that he did not witness the Petitioner commit any crime. The Petitioner said he felt like he was being "railroaded" and maintained that he was innocent. Additionally, he informed the court that he could not read. The court advised the Petitioner that he should refuse the plea offer and take his case to trial if he wanted to challenge the State's evidence. At this point, trial

---

[1] The record is unclear as to exactly what occurred on the morning of the plea proceedings. The plea paperwork apparently had not been prepared. The questions asked of the Petitioner by trial counsel appear to be for the purpose of emphasizing to his client that if he did not accept the State's offer on that day, that the offer would expire.

counsel informed the court that the four-year plea offer would expire at the end of the day. The Petitioner asked to speak with his attorney, and the court recessed for lunch.

During the recess, trial counsel again explained to the Petitioner that the offer of four years as a Range II offender would expire at the end of the day, and the Petitioner elected to take the plea. However, as trial counsel was completing the paperwork, he discovered that a sentence of four years as a Range II offender would not fit within the sentencing guidelines for the Petitioner's charges. Trial counsel informed the State of this problem, and the State offered a sentence of four years as a Range I offender. Trial counsel explained this new offer to the Petitioner, and the Petitioner chose to accept the offer.

When court reconvened, the announced plea agreement was identical to the plea agreement trial counsel had explained to the Petitioner after he informed the State about the problems with the sentencing guidelines. The State provided a factual basis for the plea, and the court conducted a plea colloquy with the Petitioner. The court conducted a standard plea colloquy, although not verbatim from the waiver, and the Petitioner stated that he understood he was giving up each right. The Petitioner confirmed that he wished to enter a guilty plea. Additionally, the Petitioner stated that he understood the plea and was entering his plea voluntarily. The court asked whether anyone was trying to "railroad" the Petitioner, and the Petitioner responded in the negative.

## The Post-Conviction Relief Hearing

At the post-conviction hearing, the Petitioner gave lengthy testimony, often contradicting himself. The Petitioner testified he had wanted to take his case to trial because the arresting officer testified at the preliminary hearing that he had not seen the Petitioner on top of the roof, and he contended that the officer's testimony supported his claim of innocence. The Petitioner stated that he reviewed the transcript and the rest of the discovery in the case with trial counsel, and trial counsel told the Petitioner that the only evidence the State had against him was the statement the Petitioner made to police about being the "look-out man." The Petitioner informed trial counsel that he did not believe that his statement to the police was an admission of guilt, and he asked trial counsel to negotiate a plea deal of two years "because [the Petitioner] had already spent that time in."[2] Trial counsel tried but was unable to negotiate a plea agreement with a two-year sentence.

The Petitioner testified that he did not think the four-year offer was acceptable because the State "didn't have no evidence on [him]." He testified that he believed he would win the case if he took it to trial. The Petitioner told trial counsel that he did not agree with

---

[2] As of the date of his guilty plea, the Petitioner had been in custody for eight months and three days for these offenses.

the offer and wanted to take his case to trial when trial counsel reviewed the plea paperwork with him. He also testified that he told the court the same thing during his first voir dire examination. The Petitioner recalled the court's telling him after the recess that they were dealing with the same offer as the one that had been offered to the Petitioner before the lunch recess. The Petitioner testified that the court reviewed the plea wavier with him, but he could not recall if the court read the plea waiver to him verbatim. He further testified that, since he could not read very well, he was relying on what the trial court and trial counsel told him. He stated that he agreed to take the plea because "I thought I was going to be railroaded." The Petitioner testified that he would have taken his case to trial if he had understood what was going on.

On cross-examination, the Petitioner testified that he could not read, but he admitted that he had written several letters to trial counsel and to the court and confirmed that the letters were in his handwriting. He stated that someone helped him spell the words, but he maintained that he knew how to write and no one told him what to write in the letters.

He also acknowledged that trial counsel was able to negotiate the plea offer from ten years as a Range II offender to four years as a Range I offender. He claimed that he did not know who trial counsel spoke to when he negotiated the plea deal, but when confronted with a copy of statements he made during the plea colloquy, the Petitioner admitted that he knew the plea offers came from the State. Further, he admitted that he had pleaded guilty on 12 prior occasions and was familiar with the plea process.

The Petitioner also acknowledged that the court asked him whether he felt someone was trying to "railroad" him during the plea colloquy and that he said he did not. However, he stated that he thought if he refused the plea "they'd make me take my case to trial." He was reluctant to do so because trial counsel had told him a jury would convict him because of the statement he made to the police claiming he was the "look-out man." He claimed that trial counsel coerced him into taking the plea, but he could not say what trial counsel did to coerce him. The Petitioner maintained that, had trial counsel "been doing his job," his case would not have gotten this far and he would be serving no time. The Petitioner claimed that trial counsel should have shown the prosecutor the transcript from the preliminary hearing and the arresting officers' affidavits because "the evidence [would] speak for itself."

The Petitioner also admitted that he had refused other plea offers from the State—one of which would have allowed him to plead guilty in exchange for a two-year sentence. He stated that he refused those plea offers because he did not want to plead guilty to a crime he did not commit. However, he testified that he chose to take the offer of four years as a Range I offender because trial counsel told him that he would lose the case at trial and he would be sentenced to serve 20 years. However, the Petitioner also testified that he did not believe he would lose the case at trial. The Petitioner maintained that trial counsel manipulated him into taking the plea because he did not understand what was going on.

On redirect, the Petitioner stated that he believed the evidence did not support trial counsel's claim that he would lose at trial, and he was confused by trial counsel's assertion. He admitted that he told the court he was entering the plea knowingly and voluntarily, but he maintained that he was trying to communicate to the court that he did not in fact understand the plea. He stated he felt that no one wanted to hear his side of the story, and if the court and the State had looked at his evidence, the case would have "never came this far."

On recross-examination, the Petitioner admitted that he asked trial counsel to try to negotiate a three-year plea deal on the date of the plea colloquy, and trial counsel attempted to negotiate a three-year plea deal. He further stated that he took the four-year plea deal because he did not want to take the chance that he may lose at trial and be sentenced to more than four years. However, he maintained that he was coerced into that decision because trial counsel told him he would be convicted at trial due to the fact he told police he was the "look-out man."

Trial counsel testified that once he was assigned to the Petitioner's case he filed a Motion for Discovery and received a discovery file from the State. He also requested a copy of the preliminary hearing transcript and the crime scene photos, and he provided all of this material to the Petitioner. He further testified that he met with the Petitioner twice at the jail and every time the Petitioner was brought to court.

Before visiting the Petitioner in jail, trial counsel obtained the Petitioner's criminal history and created a "charge exposure sheet." This document contained a list of each offense contained in the Petitioner's indictment, the felony or misdemeanor classification for each charge, and the potential sentences each charge could carry based on the Petitioner's criminal history. The document also detailed any plea offer the State had made and when that offer would expire. Finally, the document contained a statement of the Petitioner's criminal history that trial counsel used to calculate the Petitioner's potential exposure. Trial counsel testified that he made a new charge exposure sheet each time the State made a new offer.

During a jail visit, trial counsel went over the discovery file with the Petitioner "word-by-word, line-by-line" because he knew the Petitioner had difficulty reading. He also reviewed each indictment and the charge exposure sheet in the same manner. Additionally, he explained the current offer from the State, which was an effective sentence of ten years as a Range II offender.

At this meeting, trial counsel discussed specific testimony from the preliminary hearing with the Petitioner. Further, he told Petitioner that the statement he made to police saying that he was the "look-out man" was not in the discovery packet, but he thought the State would eventually find that statement in the preliminary hearing transcript. He explained to the Petitioner that if the case went to trial, the State would likely try to use his

statement against him. He further explained that he could file a motion to suppress the Petitioner's statement, but it would be up the court to decide whether the statement was admissible. Trial counsel suggested trying to negotiate a better deal before they filed any motions, and if the new deal was not acceptable to the Petitioner, they could set the case for trial. Trial counsel admitted that the Petitioner denied making a statement to police that he was "the look-out man."

Trial counsel said that the State originally offered a ten-year sentence as a Range II offender, but he was able to negotiate that offer first to six years as a Range II offender and subsequently to four years as a Range II offender. Pursuant to the Petitioner's request, trial counsel asked the State to revive the two-year offer the Petitioner had received in general sessions court, but the State refused. Additionally, on the date the plea was entered, trial counsel tried to negotiate a three-year sentence, but the State refused that offer as well.

Trial counsel further testified that he had identified a discrepancy in the discovery packet where the arresting officer claimed in the affidavit of complaint to have seen the Petitioner on the roof, but he denied seeing the Petitioner on the roof at the preliminary hearing. Trial counsel testified that he did use the discrepancy when negotiating a plea deal for the Petitioner.

During the lunch recess on the date the plea was entered, trial counsel spoke with the Petitioner about the plea offer, and the Petitioner informed him that he wanted to take a best interest plea. Trial counsel then began to prepare the paperwork for the guilty plea, and at that point, he discovered that four years as a Range II offender would not fit within the sentencing guidelines. Trial counsel brought this to the attention of the prosecutor, and the prosecutor offered to let the Petitioner plead to four years as a Range I offender. Trial counsel took this offer back to the Petitioner and explained that a Range I classification would allow him to spend less time in jail than he would if he pleaded as a Range II offender. The Petitioner agreed to accept the State's offer.

At no point did the Petitioner tell trial counsel that he was confused or that he did not know what something meant. Trial counsel testified that it was clear the Petitioner had been through the plea process a number of times, and the Petitioner knew exactly what his range of punishment would be when trial counsel reviewed the charge exposure sheet with him. Additionally, trial counsel stated that he received several handwritten letters and motions from the Petitioner. He was confident at least two letters were in the Petitioner's handwriting because they contained statements that were clearly the Petitioner's own words, and trial counsel reviewed these letters with the Petitioner.

Trial counsel admitted that the Petitioner stated several times prior to accepting the plea that he wanted to take his case to trial. Trial counsel explained to the Petitioner that the biggest problems he saw with the Petitioner's case were that the police responded to an alarm at the crime scene and found the Petitioner 20 feet away from the ladder that was used to gain

access to the roof, and according to the police, the Petitioner stated he was the "look-out man." He advised the Petitioner that this evidence would be difficult to overcome and that the Petitioner would most likely have to testify on his own behalf. Should the Petitioner testify, his criminal history could possibly be introduced. Finally, trial counsel stated that he did not force any plea deal on the Petitioner and that he would have taken the case to trial had the Petitioner refused the plea.

On cross-examination, trial counsel stated that it is not uncommon for defendants to change their minds and elect to plead guilty during a voir dire examination. Trial counsel did not recall the Petitioner's being confused when he accepted the plea.

The post-conviction court denied relief, specifically finding that the Petitioner's testimony was less than credible. The post-conviction court stated that the Petitioner's allegations were vague and unsupported and that statements he made during his testimony were often contradictory. Conversely, trial counsel's testimony was supported by the transcript of the plea proceedings. The post-conviction court found that the Petitioner did not demonstrate that the plea was involuntary or unintelligent. Further, the court found that counsel's performance was not deficient, and the Petitioner had not shown any evidence that he was prejudiced by trial counsel's performance.

## II. Analysis

In order to prevail in a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). As such, we review a trial court's findings of fact under a *de novo* standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. Id. (citing Tenn. R. App. P. 13(d); Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). The trial court's conclusions of law are reviewed "under a purely *de novo* standard, with no presumptions of correctness . . . ." Id.

When reviewing the trial court's findings of fact, this Court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the trial court." Id. at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." Id. (citing Henley, 960 S.W.2d at 579).

### *Voluntary and Intelligent Plea*

On appeal, the Petitioner argues that his guilty plea was involuntary and unintelligent because he was confused during the court proceedings. Because he cannot read, he was

forced to rely on statements made by the court and trial counsel. He claims that during the recess his attorney told him that the offer had been changed to a Range I sentence, but after the recess he was told that he was receiving "the same offer" as had been detailed in the morning proceedings. He claims this contradictory information confused him and rendered his plea involuntary and unintelligent.

When reviewing the voluntary nature of a guilty plea, this Court looks to both the federal standard as announced in the landmark case Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard as announced in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.2d 189, 193 (Tenn. 2000). Don Allen Rodgers v. State, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *5 (Tenn. Crim. App. April 26, 2012). Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." Boykin, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decisions was both voluntary and knowledgeable, i.e. that he has been made aware of the significant consequences of such a plea . . . ." Mackey, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . ." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Boykin, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship, 858 S.W.2d at 904; Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. Boykin, 395 U.S. at 244.

Further, statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea,

"constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conculsory allegations unsupported by specifics." Id. at 74.

In this case, the Petitioner stated during the plea colloquy that he understood the consequences of accepting the plea and that he was doing so voluntarily. He said he was not being coerced into taking the plea, and he confirmed that no one was trying to "railroad" him. Nevertheless, the Petitioner claims that he was confused as to the details of the plea agreement because the court stated that he would be receiving the same offer that he had received that morning, even though the offer had been changed during the recess.

We have reviewed the transcript of the plea proceedings, and we cannot find anything in the record in which the State or the court represented that the plea the Petitioner was entering after the lunch recess was the same as the plea that had been offered that morning. At the beginning of the afternoon session of court, the State announced that the Petitioner was "pleading guilty to that same C-felony. The State recommends four years jail . . . as a standard Range I offender, and that will run concurrent with [the second charge]." The terms of the plea agreement were clearly stated in court, and they were the same terms trial counsel had explained to the Petitioner during the recess. The only other times the transcript of the plea colloquy references the morning's proceedings are when the court states that the Petitioner is still under oath and when the court asks the Petitioner whether he feels as if he is "being railroaded."

The Petitioner also claims he did not understand what was going on because trial counsel never explained the difference between a Range I sentence and a Range II sentence. However, trial counsel testified that he specifically explained that accepting a Range I sentence would allow the Petitioner to spend less time in jail than if he pleaded as a Range II offender. Further, trial counsel testified that the Petitioner seemed to be familiar with the plea process and understood his potential exposure without any need for explanation.

The Petitioner argues that because he could not read well, the court and trial counsel should have taken extra precautions to ensure that the Petitioner understood his plea. However, the Petitioner wrote at least two letters to trial counsel and confirmed that those letters were written in his own handwriting. He further claimed that he wrote them himself, and the only assistance he received were spelling corrections. Moreover, trial counsel went over every document he presented to the Petitioner word-by-word and thoroughly explained every plea offer the Petitioner received. Additionally, the court explained each right the Petitioner would waive by accepting the guilty plea. The court did not recite the waivers verbatim from the plea waiver, but the Petitioner stated he understood he was giving up each

right. After acknowledging each right he would be giving up by entering a guilty plea, the Petitioner maintained that he still wished to plead guilty. He further stated that he understood the plea and did not feel confused. The court also asked the Petitioner if he felt anyone was trying to "railroad" him, and the Petitioner stated he did not.

Finally, the Petitioner claims that trial counsel coerced him into taking the plea. However, the Petitioner could not describe how trial counsel coerced him. He simply said that trial counsel told him he would lose the case if he took it to trial. Conversely, trial counsel testified that he advised the Petitioner as to what evidence could be introduced at trial. He further advised the Petitioner that, if he lost the case at trial, he could be sentenced to serve 20 years.

The post-conviction court found trial counsel's testimony to be more credible, and we are bound by that credibility determination. We find nothing in the record that contradicts the post-conviction court's finding that the Petitioner's plea was voluntary and intelligent. The Petitioner is not entitled to relief.

*Ineffective Assistance of Counsel*

The Petitioner argues that trial counsel failed to sufficiently explain the consequences of pleading guilty in a way that the Petitioner could understand and that trial counsel failed to explain on the record that the plea agreement had been changed during the recess. Consequently, the Petitioner claims that he did not have a clear understanding of the ranges of punishment he was facing or the consequences of entering a guilty plea. The Petitioner further argues that he was prejudiced by trial counsel's performance because he wanted a trial but never received one. The Petitioner claims that the record shows that he had no desire to enter a guilty plea.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove two factors: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. Id.; Henley, 960 S.W.2d at 580; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Henley, 960 S.W.2d at 579.

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); see also Goad, 938 S.W.2d at 369. Therefore, in order to prove that counsel was deficient, the petitioner must demonstrate "that the counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688); see also Baxter, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694)(internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. Hill v. Lockhart, 474 U.S.52, 58 (1985); Don Allen Rodgers, 2012 WL 1478764, at *4. First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. See Hill, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would have not have pleaded guilty and would have insisted on going to trial." Id. at 59.

In this case, trial counsel took considerable steps to keep the Petitioner informed as to what was happening in the case. Trial counsel met with the Petitioner and went over all the documents he had collected "word-for-word, line-for-line" because he knew the Petitioner had difficulty reading. Further, trial counsel created a "charge exposure sheet" which detailed the amount of time the Petitioner could be sentenced to serve if he was convicted at trial as well as the details of every plea offer the State had extended.

Trial counsel was also able to negotiate the State's offer from ten years as a Range II offender down to four years as a Range I offender. Trial counsel explained each new offer to the Petitioner. When the Petitioner asked trial counsel to negotiate a two-year and a three-year plea agreement with the State, trial counsel took the Petitioner's requests to the State, but the State refused them.

The Petitioner did state multiple times that he wanted to take his case to trial. Trial counsel testified that he would have taken the case to trial had the Petitioner decided to do

so. However, trial counsel also advised the Petitioner as to the possible consequences the Petitioner could face if he lost at trial. When faced with the choice of taking the case to trial and risking a loss versus taking the offer of four years as a Range I offender, the Petitioner elected to enter a best interest guilty plea.

Finally, the Petitioner correctly states that trial counsel did not explain the terms of the final plea agreement on the record after the court's recess. However, trial counsel explained the new offer to the Petitioner during the recess and told him that pleading as a Range I offender would allow him to get out of jail sooner. Further, the State announced the details of the new plea arrangement on the record, and that announcement was identical to the plea agreement trial counsel had explained to the Petitioner. At no point after he chose to accept the four years as a Range I offender plea did the Petitioner indicate that he did not understand the agreement or wanted to take his case to trial. Based on these facts, we hold that the post-conviction court did not err when it found that trial counsel's performance was not deficient and the Petitioner did not suffer any prejudice. The Petitioner is not entitled to relief.

*Denial of Due Process*

The Petitioner argues that he was denied due process because the trial court did not take extra steps to ensure the Petitioner understood the guilty plea once the Petitioner stated he could not read. Further, the Petitioner argues that his due process rights were violated when the trial court concluded that the Petitioner was "playing games," but it did not identify what conduct was "gamesmanship" and what conduct was the Petitioner's misunderstanding of the plea. It appears to us that the Petitioner's due process argument is simply a restatement of his claim that his plea was involuntary and unintelligent. We have already determined that the Petitioner's plea was voluntary and intelligent, but for the sake of completeness, we will address his due process argument.

To satisfy the due process requirement in the context of a guilty plea, Boykin requires the court to "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." Boykin, 395 U.S. at 244. This plea colloquy must appear on the face of the record. See id. at 242. Once the trial court conducts a proper plea colloquy, it "leaves a record adequate for any review that may be later sought." Id. at 244.

Tennessee Rule of Criminal Procedure 11 lists what a trial court must address in a plea colloquy. The Rule states:

-12-

Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:

(A) the nature of the charge to which the plea is offered;

(B) the maximum possible penalty and any mandatory minimum penalty;

(C) if the defendant is not represented by an attorney, the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and every other stage of the proceeding;

(D) the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E) the right to a jury trial;

(F) the right to confront and cross-examine adverse witnesses;

(G) the right to be protected from compelled self incrimination;

(H) if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I) if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offence to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury; and

(J) if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea.

Tenn. R. Crim. P. 11(b)(1). Additionally, the Rule requires that the trial court determine that the plea is "voluntary and is not the result of force, threats, or promises (other than promises in a plea agreement)" and whether the defendant's willingness to enter a plea "results from prior discussions between the district attorney general and the defendant or the defendant's attorney." Tenn. R. Crim. P. 11(b)(2). Also, the trial court must determine that there is a factual basis for the plea. Tenn. R. Crim. P. 11(b)(3). Finally, Tennessee law requires the trial court to inform the defendant that the defendant's prior convictions may increase the punishment for his or her guilty plea, and the resulting conviction from the present guilty plea may enhance punishment in any future convictions. Howell, 183 S.W.3d at 331.

However, the trial court need not literally comply with the advice to be given a defendant during the plea colloquy. Lane v. State, 316 S.W.3d 555, 564 (Tenn. 2010). Instead, "a trial court must substantially comply with the required advice." Id. A trial court substantially complies with the required plea colloquy when it provides the defendant with the "sense of the substance of the required advice." Id. (quoting Howell, 185 S.W.3d at 331) (internal quotation marks omitted). Further, "[i]t is substantial compliance if the sense of the rights and information set out in the litany is completely stated to the guilty-pleading defendant, on the record, even though the trial judge does not use the exact script suggested." Id. at 564-565 (quoting State v. Neal, 810 S.W.2d 131, 136 (Tenn. 1991), overruled in part on other grounds by Blankenship v. State, 858 S.W.2d 897 (Tenn. 1993)) (internal quotation marks omitted).

In the present case, the trial court conducted a thorough plea colloquy with the Petitioner. The trial court asked the Petitioner if he was entering his plea voluntarily, and the Petitioner said yes. Finally, the trial court asked whether the Petitioner felt as if anyone was trying to "railroad" him, and the Petitioner stated that he did not. Although the trial court did not recite the plea colloquy verbatim from the plea waiver, it did communicate the substance of each waived right. We, therefore, find that Petitioner's due process claim has no merit.

### III. Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE